**United States District Court**
**Southern District of Georgia**
**Brunswick Division**

| | | |
|---|---|---|
| **John Powell and Brian Scott,** **Plaintiffs** | \| | **Civil Action No.** |
| **vs.** | \| | **2:26-cv-58** |
| **Emmett Neal Jump, et al** **Defendants** | \| | |

# Defendant, Jacquelyn Lee Johnson's Motion to Dismiss and Argument of Law in Support

Pursuant to *F.R.C.P. 12(b)(6)*, Defendant **Jacquelyn Lee Johnson** ("Defendant" or "Johnson") herewith timely moves this Court for an Order Dismissing all claims against her in the above-styled matter with prejudice and shows this Honorable Court the following.

## *I. Introduction*

The two counts asserted against Johnson are a Fourth Amendment malicious-prosecution claim under *42 U.S.C. § 1983* and a derivative *§ 1983* conspiracy claim. The conduct Plaintiffs allege Johnson to have been responsible for such as the indictments, booking, bond, prosecution, and judicial proceedings consists of core prosecutorial acts for which Johnson is shielded from liability under absolute immunity. The remainder of Johnson's conduct was discretionary acts in the performance of her official duties as District Attorney for which Johnson is

protected from liability by Qualified Immunity.

Should further inquiry and analysis be required, Plaintiffs cannot connect Johnson to the continued prosecution after her recusal of herself and her office on May 21, 2020, because new and independent prosecutorial judgment took over and maintained the prosecution for the next four years.

Further, any claims predicated on Johnson's conduct which is distinct from the alleged malicious prosecution are time-barred by the two-year Statute of Limitations governing *42 U.S.C. § 1983* claims.

Finally, the allegations of Plaintiffs' Complaint are vague and conclusory and thus woefully insufficient to plead a conspiracy claim under *§ 1983*. Should the Court find the pleading sufficient, nevertheless, the conspiracy claim must fail, because where the underlying constitutional claim fails, a conspiracy claim cannot be established and must be dismissed.

For these reasons, Johnson is entitled to an Order Dismissing all of Plaintiffs' claims against her With Prejudice.

## ***II. Facts***

Plaintiffs filed this action on June 22, 2026. Count I alleges malicious

prosecution under *§ 1983*.[1] Count II alleges conspiracy under *§ 1983*.[2] Both counts incorporate all 488 preceding factual paragraphs and attribute liability collectively to numerous defendants.[3]

On February 28, 2020, Plaintiffs were indicted by a Glynn County, Georgia Grand Jury.[4] On May 21, 2020, Johnson recused herself and her Office from the continued prosecutions of Plaintiffs.[5] On June 15, 2020, via administrative order, the Georgia Attorney General appointed South Georgia Judicial Circuit District Attorney, Defendant Joe Mulholland (hereinafter "Mulholland") to take over the prosecution of the criminal cases against Plaintiffs.[6]

The Complaint alleges that Johnson and her Office by and through retired Clayton County District Attorney Tracy Graham-Lawson[7] sought charges, used court proceedings to obtain testimony, made decisions concerning witnesses and evidence, participated in grand-jury proceedings, and secured indictments against Plaintiffs prior to May 21, 2020 when she recused her office from the prosecution.[8]

Plaintiffs also allege that while District Attorney and prior to May 21, 2020,

---

1 Complaint, Doc. 1, ¶¶ 489-494.
2 Id. ¶¶ 495–501.
3 Id. ¶¶ 489-501.
4 Id. ¶ 384.
5 Id. ¶ 392.
6 Id. ¶ 393
7 Id. ¶¶ 336-337. Ms. Graham-Lawson was hired as a Special Assistant by Johnson on November 15, 2019.
8 See, e.g., Id. ¶¶ 200-220, 239-263, 300-338, 384-393.

Defendant Johnson did things other than preparation for, initiation of, and presentation of criminal proceedings, such as meeting with County Commissioners and other local governmental officials and responding to inquiries of prospective employers of one or more Plaintiffs.[9]

### *III. Argument of Law*

### a. Legal Standard

Dismissal is justified when Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.[10] Furthermore, "[t]*hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.*"[11] As this Court has previously made very clear, "*Rather, the contentions contained in the complaint must 'plausibly suggest,' and 'not merely be consistent with' a recognized cause of action under the governing law.*"[12] *Federal Rule of Civil Procedure 8(a)(2)* requires that a pleading contain a "*short and plain statement of the claim showing that the pleader is entitled to relief.*" While this pleading standard does not require detailed factual allegations, label and conclusions or a formulaic recitation of the elements of a cause of action will not

9 Id, ¶¶ 272, 278-282, 308-312

10 *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)

11 *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009)

12 See *Copeland vs. Georgia*, No. CV 209-57, 2009 WL 10678677 at *1 (S.D. Ga. Sept. 16, 2009) (citing *Bell Atl. Corp. vs. Twombly*, 550 U.S. 544, 557 (2007))

do."[13] To withstand a motion to dismiss, "*a complant must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'*"[14] A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.[15] A court may consider the complaint, its exhibits, and documents central to the claim whose authenticity is not disputed.[16]

For purposes of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff; however, the same does not apply to legal conclusions set forth in the complaint.[17] The court does not "*accept as true a legal conclusion couched as a factual allegation.*"[18] Regardless of the facts, however, a court may dismiss a complaint on a dispositive issue of law.[19]

Finally, questions of immunity should be resolved at the earliest possible stage in litigation when the protected function appears on the face of the

13 *Iqbal*, *supra* 556 U.S. at 678.
14 *Id*. (quoting *Twombly*, *supra* at 550 U.S. at 570).
15 *Id*.
16 See *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).
17 *Duke v Hamil, et al*, 997 F.Supp.2d 1291, 1295 (N.D.Ga. 2014) (see also *Iqbal*, *supra* at 556 U.S. at 678).
18 *Duke*, *supra* at 1295 (quoting *Twombly*, *supra* at 550 U.S. at 555.
19 *Marshall County Bd. Of Educ.*, *supra*, 992 F.2d at 1174

complaint.[20] The inquiry is functional: the Court examines the nature of the function performed, not the actor's title or Plaintiffs' characterization of motive.[21]

### b. Plaintiffs' *42 U.S.C. § 1983* Claims Must Be Dismissed With Prejudice, Because Johnson Is Absolutely Immune from Damages Liability

Prosecutors are absolutely immune from *§ 1983* damages liability for acts intimately associated with the judicial phase of the criminal process.[22] This protection applies to initiating a prosecution, presenting the State's case, preparing for judicial proceedings, evaluating evidence for prosecution, examining witnesses, and deciding whether and how to pursue charges.[23]

The immunity inquiry is functional which looks to "*the nature of the function performed, not the identity of the actor who performed it*".[24] It does not turn on allegations of malice, bad faith, conspiracy, suppression of evidence, use of false testimony, or improper political motive.[25] In fact, the *Imbler* case involved allegations that a prosecutor knowingly used false testimony and suppressed exculpatory evidence.[26] Moreover, a plaintiff cannot avoid immunity by attaching

---

20 *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) See also *Hart v. Hodges*, 587 F.3d 1288, 1294–98 (11th Cir. 2009)

21 *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)

22 *Imbler v. Pachtman*, 424 U.S. 409, 427–31 (1976).

23 *Id.*; see also *Buckley*, *supra* 509 U.S. at 269–73 and *Hart*, 587 F.3d at 1295–98.

24 See *Buckley*, *supra* at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988))

25 See *Buckley*, *supra* 509 U.S. at 269-271 and *Imbler*, *supra* 424 U.S. at 413, 427-431.

26 See *Imbler*, *supra* 424 U.S. at 413, 427-431.

an investigative label to advocacy undertaken in preparing for or conducting judicial proceedings.[27]

### 1. The Conduct Plaintiffs Allege to Have Caused Their Seizure(s) Consists of Wholly Advocative Prosecutorial Functions Protected by Absolute Immunity.

The Complaint's alleged causal chain leading to the claimed seizure rests on Johnson's actions as District Attorney beginning with her evaluation of accusations, direction of prosecutorial personnel, preparation for charging decisions, use of judicial proceedings to obtain testimony, examination of witnesses, decisions concerning testimony and evidence, participation in grand-jury proceedings, procurement of the February 2020 indictment, and up through her recusal of her office from the prosecution on May 21, 2020.[28] These are classic advocative functions which lie at the very heart of the actions typical of a prosecutor's exercise of judgment that absolute immunity is designed to protect.[29]

Plaintiffs attempt to avoid immunity by alleging that Johnson manipulated witnesses, suborned perjury, withheld exculpatory information, influenced grand-

---

27 *Buckley*, *supra* 509 U.S. at 273

28 Complaint, Doc. 1 ¶¶ 200-220, 239-263, 300-338, 384-393.

29 See *Imbler, supra* 424 U.S. at 430-31 & n.33; *Hart*, *supra* 587 F.3d at 1295-98; and see also *Hoffman v. Office of the State Attorney*, 793 F. App'x 945, 950 (11th Cir. 2019) (a prosecutor's recusal decision is intimately associated with the judicial phase of the criminal process).

jury proceedings, and acted from personal or political motives.[30] But as the Supreme Court held in *Buckley*, *supra*, and *Forrester*, *supra*, Johnson's immunity inquiry turns on the function performed, and not the Plaintiffs' characterization of her conduct or alleged motive. As the Eleventh Circuit has ruled, "[a] *prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government.*"[31] Likewise, the Eleventh Circuit later ruled that the prosecutor's motives are irrelevant in the absolute immunity analysis, citing to *Imbler*, *supra* for the principle that a prosecutor enjoys absolute immunity even when the acts are dishonest or malicious, so long as the actions are within the function of the prosecutor's role. [32] This District Court has also held that a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant in the absolute immunity analysis.[33]

As the Supreme Court explained in *Imbler*, "[t]*he duties of the prosecutor in*

---

30 Complaint, Doc. 1. ¶¶ 220-263, 300-338, 492.

31 *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002).

32 *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364 at*7 (11th Cir., September 22, 2022) ("*As the Supreme Court explained in Imbler, absolute immunity hinges on the "functional nature of the [prosecutor's] activities," not on their personal motivations, and so prosecutors may be immune even when their actions are "malicious or dishonest." Imbler, 424 U.S. at 427, 430; see also Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) ("Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity[.]"); Brummett v. Camble, 946 F.2d 1178, 1181 (5th Cir. 1991) (holding that prosecutors are entitled to absolute immunity even if they have a "personal interest in filing charges" because "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions*.")."

33 *Neville vs. Classic Gardens*, 141 F.Supp 1377, 1381 (S.D.Ga. 2001) (citing *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2nd Cir.2001))

*his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.*"[34] Johnson's conduct as alleged by Plaintiffs here, including the evaluation of accusations, management of prosecutors and witnesses, charging decisions, grand-jury presentments, evidentiary judgments, and decisions concerning the prosecution itself, is wholly functional, and thus falls squarely within that protected advocative role for which she is absolutely immune from *42 U.S.C. § 1983* damages liability.

**2. Plaintiffs cannot avoid immunity by labeling protected conduct a conspiracy.**

A plaintiff may not plead around absolute immunity merely by attaching a conspiracy label to otherwise protected conduct. The Supreme Court has rejected plaintiffs' efforts to evade immunity by recasting protected conduct as part of a conspiracy.[35] Likewise, under *Rehberg*, Johnson's decisions concerning witness preparation, evidentiary matters, charging, grand-jury presentments, procurement of indictments, and recusal from the prosecution remain protected even when Count II characterizes those acts as part of a conspiracy.[36] The Doctrine of Absolute Immunity would be effectively nullified if these Plaintiffs could transform Johnson's

34 *Imbler*, *supra* 424 U.S. at 431 n. 33.

35 *Rehberg v. Paulk*, 566 U.S. 356, 369-70 (2012)

36 Complaint, Doc 1 ¶¶ 495-501

protected prosecutorial conduct into a damages claim simply by alleging an agreement among participants in the criminal process.[37] Such would have the effect of standing *Imbler*, *Buckley*, *Hart*, and other decisions cited herein on their proverbial heads.

### 3. No Non-Immune Act Caused the *§ 1983* Seizure Alleged In Count I.

*42 U.S.C. § 1983* supplies a remedy only for the deprivation of a federal right.[38] Count I is a malicious prosecution claim tied to seizure pursuant to legal process.[39] Plaintiffs therefore must plead a causal connection between a non-immune act by Johnson and the constitutionally infirm legal process producing the alleged seizure.[40]

Plaintiffs' Complaint identifies the alleged seizure as Plaintiffs' booking and processing at the county jail, requirement to post bond, and being held over for trial pursuant to the indictments and criminal proceedings.[41] The Complaint, the factual allegations of which must be taken as pled, does not allege any non-advocative conduct by Johnson that procured either indictment, caused arrest and

37 *Rehberg*, *supra* 566 U.S. at 370 ("*We decline to endorse a rule of absolute immunity that is so easily frustrated.*")

38 *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

39 Complaint, Doc. 1. ¶¶ 489-494

40 See *Williams v. Aguirre*, 965 F.3d 1147, 1157-65 (11th Cir. 2020).

41 Complaint, Doc 1 ¶¶ 391, 490-491, 494, and 497.

booking, imposed bond conditions, continued prosecution after her May 21, 2020 recusal of herself and her office, or otherwise caused the seizure alleged in Count I. Moreover, the Complaint fails to connect any act outside Johnson's function as a prosecutor to the asserted Fourth Amendment seizure.

Rather, Plaintiffs' allegations as pled within their Complaint clearly confirm that their alleged seizure(s) flowed from conduct which can only be attributed to Johnson's acting in her advocative prosecutorial role and thus the exact conduct for which Johnson is absolutely immune under *Imbler*, *Buckley*, *Hart*, and the large body of controlling Federal Authority cited hereinabove. Indeed, Plaintiffs allege that Johnson (and Defendants) caused them to be subjected to judicial proceedings without probable cause with the resulting seizure being their booking and processing at the county jail, requirement to post bond, and being held over for trial pursuant to the indictments.[42] Again, as identified elsewhere, the exact conduct Plaintiffs allege to have resulted in their being indicted, arrested, and prosecuted in judicial proceedings includes Johnson's charging decisions, use of judicial proceedings to obtain testimony, decisions concerning witnesses and evidence, participation in grand-jury proceedings, procurement of indictments, and

---

42 Id, ¶¶ 391, 490, 491, 494, and 497.

continuation of the prosecution, all core prosecutorial advocative functions.[43]

By contrast, the allegations Plaintiffs characterize as falling outside Johnson's prosecutorial role concern employment-related communications, interactions with county officials, and allegations of reputational harm.[44] Even accepting Plaintiffs' allegations as true that Johnson contacted county officials, criticized Plaintiffs, and attempted to affect their employment, any conversations with a county manager or commissioners did not cause and are not an arrest, detention, bond condition, warrant, indictment, or other legal process. Alleged reputational injury and/or employment loss may be consequential harms or may suggest state-law theories, subject to applicable defenses, but injury alone is not a federal constitutional violation.[45]

It is clear that Plaintiffs' Complaint wholly fails to plausibly connect any conduct by Johnson alleged to be outside of her prosecutorial role with causing criminal process to issue, causing Plaintiffs' booking or detention, requiring the imposition of bond conditions, or otherwise producing the seizure underlying Count I. Thus, Count I therefore fails to allege a causal connection between any purportedly non-immune conduct and the asserted Fourth Amendment seizure.

---

43 Id, ¶¶ 200-220, 239-263, 300-338, and 384-393.
44 Id, ¶¶ 272, 278-282, and 308-312
45 *Paul v. Davis*, 424 U.S. 693, 712 (1976).

Were this insufficient, the Complaint's own allegations identify third parties, not Johnson, as the relevant decisionmakers on the questions of Plaintiffs' employment. After Johnson told Vidalia officials that Scott had "*done nothing wrong*" and had "*nothing to worry about,*" Scott was hired as Police Chief.[46] Likewise, as to Powell, Plaintiffs allege that he remained employed by Glynn County for nearly a year after the February 2020 indictment and that Glynn County Manager Alan Ours, not Johnson, made the decisions concerning Powell's administrative leave, removal as Police Chief, and ultimate termination.[47]

Count I is a Fourth Amendment malicious-prosecution claim, not a vehicle for every historical grievance alleged in the Complaint. Plaintiffs cannot transform employment disputes, political disagreements, reputational allegations, commissioner communications, or consolidation controversies into causes of their alleged Fourth Amendment seizures merely by incorporating those allegations into Count I.

For the foregoing reasons alone, Defendant Johnson is entitled to an Order Dismissing Plaintiffs' *42 U.S.C. § 1983* Claims With Prejudice.

---

46 Complaint, Doc 1 ¶¶ 309-312.

47 Id. ¶¶ 446-451.

**c. Any Conduct of Johnson Falling Outside Absolute Immunity Is Protected By Qualified Immunity.**

Assuming *arguendo* that Plaintiffs could overcome the absolute-immunity and causation hurdles and somehow plausibly connect a non-advocative act by Johnson to the seizure alleged in Count I, that would not establish liability. It would merely shift the analysis to qualified immunity. Again, while Johnson, as the moving party, must accept the non-moving Plaintiffs' factual pleadings as true for purposes of this Motion, the non-moving Plaintiffs must be held to their admissions *in judicio*. Plaintiffs have sued Johnson for actions she took in her capacity as the District Attorney for the Brunswick Judicial Circuit, within the scope of her employment, and under color of state law.[48]

Critically and fatally for Plaintiffs' Claims, by virtue of the Complaint's allegation that "*At all times relevant,*" Johnson acted as the elected District Attorney and under color of state law, any alleged investigation of possible criminal conduct must fall within the scope of the discretionary authority with which she is empowered under the Georgia Constitution.[49] Once discretionary authority is

---

48 Id, ¶ 11 ("*11. At all times relevant, Defendant JACQUELYN LEE JOHNSON was the District Attorney for the Brunswick Judicial Circuit, was acting within the scope of her employment, and was acting under color of state law.*"

49 *O.C.G.A. § 15-18-6(4)* ("*The duties of the district attorneys within their respective circuits are: … (4) To review every individual case for which probable cause for prosecution exists and to make a prosecutorial decision available under the law based on the facts and circumstances of each individual case under oath of duty as provided in Code Section 15-18-2;*")

established, Plaintiffs bear the burden of plausibly alleging both: 1) that Johnson personally violated a federal constitutional right; and 2) that the right was clearly established at the time of the challenged conduct.[50] The Court may address either prong first.[51]

### 1. Plaintiffs Fail to Plead Any Johnson-Specific Constitutional Violation.

The Complaint fails at the first prong. Paragraph 492 attributes misconduct collectively to "Defendants", without distinguishing Johnson from the numerous other defendants named in the Complaint. Nowhere therein does it identify the particular evidence Johnson allegedly fabricated, the testimony she allegedly manipulated, any specific false statement or material omission attributable to her, the person to whom she allegedly supplied information, the legal process in which the information was used, how the information was material to probable cause, or how it caused Plaintiffs' indictments, booking, bond conditions, or continued prosecution.

Vague and conclusory allegations cannot substitute for defendant-specific facts establishing personal participation and causation.[52] Although *Buckley*

50 *Pearson*, *supra* 555 U.S. at 231-32.
51 *Id*. at 236.
52 See *Iqbal*, *supra* 556 U.S. at 676-79; See also *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

distinguishes police-like investigation undertaken to develop probable cause from advocative preparation for judicial proceedings,[53] characterizing conduct as "investigative" answers only the immunity-function question and hardly serves to sufficiently allege under *Iqbal* and *Twombly* that a constitutional violation occurred. Plaintiffs must still identify a particular non-immune act by Johnson that supplied materially false information to constitutionally infirm legal process and caused the resulting seizure. The Complaint does not do so, and for this reason alone, Johnson is entitled to protection under Qualified Immunity and an Order Dismissing Plaintiffs' Complaint With Prejudice. However, Plaintiffs' shortcomings do not end there.

**2. There Is No Violation of a Clearly Established Constitutional Right.**

While the Complaint fails at Qualified Immunity's first prong, it also clearly fails under the second prong. The United States Supreme Court has made it very clear that "*A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing*

53 *Buckley*, *supra*, 509 U.S. at 273-76

*violates that right."*[54] While a case directly on point is not required, but existing precedent must have placed the statutory or constitutional question beyond debate.[55]

The Complaint fails to identify any controlling precedent holding that the particular *non-advocative* conduct allegedly performed by Johnson violated the Fourth Amendment under materially similar circumstances. The clearly established inquiry must be conducted at an appropriate level of specificity.[56] Under *al-Kidd*, it is not enough to invoke the general proposition that an official may not fabricate evidence or cause a prosecution without probable cause. Plaintiffs must identify the particular Johnson conduct at issue and demonstrate that existing precedent placed the unconstitutionality of that conduct "*beyond debate.*"[57]

Because the Complaint does not identify a specific non-advocative act by Johnson that allegedly violated the Fourth Amendment, it necessarily cannot show that clearly established law provided Johnson fair notice that such conduct was unconstitutional. Johnson is therefore entitled to the full protection of qualified immunity for any conduct the Court determines was investigative or otherwise

54 *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))

55 *Ashcroft v. al-Kidd*, *supra* 563 U.S. at 741.

56 *Id*. at 742 ("*We have repeatedly told courts … not to define clearly established law at a high level of generality.*")

57 *Id*. at 741

outside the scope of absolute prosecutorial immunity and the Dismissal of all Claims against her With Prejudice.

**d. Plaintiffs' Complaint Fails to Connect Johnson to the Continued Prosecution After Her Recusal of May 21, 2020.**

The Complaint affirmatively alleges that Johnson recused herself and her office from the prosecution on May 21, 2020 and that, on June 15, 2020, the Attorney General appointed Joe Mulholland as special prosecutor.[58] Thereafter, Mulholland assumed total control of the prosecution of Plaintiffs, including all conduct of subsequent grand-jury proceedings, the procurement of the August 20, 2021 superseding indictment, and the continued prosecution of Plaintiffs.[59] Thus, by and through their Complaint, Plaintiffs admit *in judicio* to the existence of an intervening sequence of independent prosecutorial and grand-jury decisions occurring for years after Johnson's recusal in May of 2020.

Indeed, subsequent to Johnson's recusal, the prosecution of Plaintiffs continued for over four years through appeals and Appellate rulings, culminating on June 25, 2024 when the final charges were *nolle prossed*.[60] Every decision in those subsequent four years and one month was made by Johnson's successor,

---

58 Complaint, Doc 1 ¶¶ 392 & 393
59 Id. ¶¶ 426-430
60 Id. ¶¶ 436-441.

prosecutors under his direction, and courts, each of whom exercised independent legal authority for many years after Johnson's May 21, 2020 recusal and departure from office. The allegations of the Complaint serve to admit that after Johnson's recusal on May 21, 2020, she had no further involvement with, exercised no judgment or control over, made no decisions about, and did nothing to cause the continued prosecution of Plaintiffs.

The Eleventh Circuit has long recognized that intervening decisions by subsequent prosecutors, grand juries, and courts generally sever the causal chain unless those decisions were procured through deception, fraud, or undue pressure.[61] Nothing in the 501-Paragraph Complaint alleges that Johnson controlled, directed, deceived, pressured, or otherwise improperly influenced the special prosecutor, any subsequent grand jury, or any court after her recusal and departure from office. Even assuming Plaintiffs can establish favorable termination for accrual purposes under *McDonough v. Smith*, 588 U.S. 109 (2019), they must still plausibly allege that Johnson caused the continuation of the prosecution following her May 21, 2020 recusal. They do nothing of the sort. To the contrary, they admit that after May 21, 2020, independent prosecutors and

61 *Barts v. Joyner*, 865 F.2d 1187, 1195-96 (11th Cir. 1989); see also *Williams v. Aguirre*, 965 F.3d 1147, 1167 (11th Cir. 2020).

grand juries exercised their own authority with respect to the prosecution. Accordingly, Plaintiffs fail to plausibly allege the causal connection necessary to impose § 1983 liability upon Johnson for the continuation or ultimate disposition of the criminal proceedings. With the causal chain severed effective May 21, 2020, Johnson is entitled to an Order Dismissing Plaintiffs' Complaint With Prejudice as to all Counts.

**e. Claims Predicated on Conduct of Johnson Which Are Distinct from the Alleged Malicious Prosecution Are Time-Barred.**

Plaintiffs have admitted that Johnson's connection with the prosecution ceased on May 21, 2020. For *42 U.S.C. § 1983* claims arising in Georgia, the applicable statute of limitations is two years.[62] Plaintiffs filed this action on June 22, 2026, some six years and one month after Johnson last had anything to do with the case.

Plaintiffs' 501-Paragraph Complaint relies heavily on events which occurred many years prior to anything related to the alleged malicious prosecution, including allegations concerning the Sasser matter, grand-jury activity, communications with county officials, alleged efforts to influence employment decisions, public

62 *Presnell v. Paulding Cty., Ga.*, 454 F. App'x 763, 767 (11th Cir. 2011)

statements, and alleged consolidation efforts dating from 2010 through 2020.[63] To the extent Plaintiffs seek to impose liability based upon those earlier communications, statements, employment-related conduct, political activity, investigative actions, or other conduct distinct from the alleged malicious prosecution itself, any such claims accrued when those events occurred and are barred by Georgia's two-year statute of limitations.[64]

Any attempt on the part of the Plaintiffs to contend that their malicious-prosecution claim did not accrue until favorable termination of the criminal proceedings applies only to the malicious prosecution claim itself. The favorable-termination rule cannot be held to convert every earlier employment, reputational, political, or communications-based allegation into part of the constitutional tort. The *42 U.S.C. § 1983* injury remains the alleged seizure pursuant to legal process.[65] All else must be held to be time-barred and must be dismissed with prejudice.

**f. Count II Fails to State a Conspiracy Claim Under *42 U.S.C. § 1983*.**

To plead a viable conspiracy claim under *42 U.S.C. § 1983*, this District Court has held that Plaintiffs are required to plead facts showing a violation of a federal right, an agreement among the Defendants to violate such a right, and an

63 See, e.g., Complaint, Doc 1 ¶¶ 75-150, 222-289, and 320-338.
64 *Presnell*, *supra* 454 F. App'x at 767
65 See *Williams*, *supra* 965 F.3d at 1158-65.

actionable wrong.[66] A complaint will be dismissed as insufficient where the allegations it contains as to the requisite agreement to support the existence of a conspiracy are vague and conclusory.[67] Where the underlying constitutional claim fails, a conspiracy claim cannot be established and must be dismissed.[68]

Paragraphs 496 through 500 allege that all Defendants "reached an understanding," acted for an "unlawful purpose," and committed unspecified "overt acts." Those allegations merely recite elements. They do not identify the time, place, participants, communication, scope, or terms of any agreement involving Johnson. Nor do they identify a Johnson-specific non-immune overt act that caused the Fourth Amendment seizure. Historical association, disagreement, parallel objectives, and later events do not plausibly plead an actual agreement by Johnson to violate a federal right.

The only underlying federal violation identified in Count II is the same arrest, bond, and prosecution alleged in Count I.[69] The functions alleged to have caused those proceedings are protected by prosecutorial immunity, and the remaining employment and reputational allegations do not establish the malicious-

---

66 *Gibbons vs. McBride*, 124 F.Supp 3rd 1342, 1379 (S.D.Ga. 2015).

67 *Fullman*, *supra* 739 F.2d at 556–57.

68 *Spencer vs. Benison*, 5 F.4th 1222, 1234 (11th Cir. 2021). (See also *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 (11th Cir. 2009) (per curiam) (noting that "*a plaintiff must demonstrate a denial of constitutional rights to sustain a conspiracy claim under § 1983*").

69 Complaint, Doc 1 ¶¶ 496–501.

prosecution violation. Count II therefore must fail both for lack of a plausible agreement and for lack of an actionable underlying violation by Johnson.

***IV. Conclusion***

Plaintiffs' claims against Johnson clearly fail for multiple independent reasons. The conduct alleged to have produced the indictments and prosecution is protected by absolute prosecutorial immunity. Any conduct falling outside that protection is shielded by qualified immunity, both because it does not plausibly establish a Johnson-specific constitutional violation, and it is not alleged to have caused the seizure underlying Count I. Many allegations are independently time-barred, and the Complaint fails to plausibly connect Johnson to the continuation of the prosecution after her May 21, 2020 recusal. Count II cannot be sustained for lack of a plausible agreement and because no underlying constitutional violation is adequately alleged.

For the foregoing reasons, Defendant Johnson is entitled to an Order Dismissing all claims within Plaintiffs' Complaint against her With Prejudice.

WHEREFORE, Defendant Johnson prays the Court will GRANT this Motion and issue an Order which Dismisses With Prejudice all of Plaintiffs' claims against her as lodged in their Complaint and which affords her such other and further relief as this Honorable Court deems, mete, just, equitable, and appropriate under all

circumstances of this case.

Respectfully submitted, this day, September 10, 2026.

Gannam, Gnann & Steinmetz, LLC

By: Christian J. Steinmetz III
Georgia Bar No. 278260

Attorneys for Defendant
Jacquelyn Lee Johnson

Post Office Box 10085
Savannah, Georgia 31412-0285
Tel: 912.232.1192
Email: *cjs@ggsattorneys.com*

# Certificate of Service

This certifies that I have served a copy of the foregoing on all counsel of record in the above-styled proceeding by causing a copy to be:

- ☐ deposited in the United States Mail, sufficient postage prepaid,
- ☐ hand delivered in Court**;**
- ☐ sent via fax transmission;
- ☐ sent via statutory electronic service to the address above;
- ☒ **served via the U.S. District Court's Electronic Filing System**

on this day, September 10, 2026.

Gannam, Gnann & Steinmetz, LLC

By: Christian J. Steinmetz III
Georgia Bar No. 278260

Post Office Box 10085
Savannah, Georgia 31412-0285
Tel: 912.232.1192
Email: cjs@ggsattorneys.com

Attorneys for Defendant
Jacquelyn Lee Johnson