IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| JOHN POWELL and BRIAN SCOTT, | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case Number: 2:26-cv-00058-LGW-BWC |
| | * | |
| EMMETT NEAL JUMP; JACQUELYN LEE JOHNSON; JAMES C. PROCTOR; STEPHEN D. JESSUP; JORDAN DANIEL LOWE, JR.; MICHAEL W. LAWSON; WILLIAM V. DARAS; LIBERTY A. STEWART a/k/a LIBERTY A. GENDRON; JOHN DUSTIN SIMPSON; ELZAVER DUSTIN DAVIS; JOSEPH MULHOLLAND; BANKS THOMAS SMITH; and MARK RANDALL, | * | |
| | * | |
| Defendants | * | |

**MOTION TO DISMISS BY DEFENDANTS JUMP, JESSUP, LOWE, AND LAWSON**

COME NOW Emmett Neal Jump, Stephen D. Jessup, Jordan Daniel Lowe, Jr., and Michael W. Lawson, Defendants in the above-styled action, and pursuant to Federal Rule of Civil Procedure 12(b) move the Court to dismiss all claims asserted against them in Plaintiffs' complaint. In support of this motion, these Defendants show the following:

**Introduction**

Plaintiffs' complaint spans nearly 500 paragraphs and recounts events occurring over the course of nearly two decades, involving numerous individuals and circumstances that are only tangentially related, if at all, to the claims asserted against

the four Defendants who bring this Motion. Despite its extraordinary length, the complaint does not plead the facts necessary to state a viable claim against Defendant Jump, Jessup, Lowe, or Lawson. Instead, Plaintiffs rely on broad, conclusory allegations and generalized references to the conduct of numerous other individuals, without identifying facts showing what any of these Defendants allegedly did to violate Plaintiffs' constitutional rights.

With respect to Plaintiffs' claims for malicious prosecution, the Georgia Supreme Court ruled in Plaintiffs' favor with respect to the charges against them for violation of oath of office on April 30, 2024. At that point, the criminal proceedings as to those charges terminated in Plaintiffs' favor. Because the limitations period began to run at that time, Plaintiffs' June 2026 action is untimely as to any claims arising from the oath-of-office charges. And *all* of Plaintiffs' malicious prosecution claims fail because Plaintiffs do not allege facts connecting any of these Defendants to the indictments in a manner sufficient to support liability. Plaintiffs do not allege that any Defendant testified before either grand jury and do not identify any specific information from any Defendant that was communicated to the grand jury – let alone allege that any Defendant fabricated the sole evidence used to obtain either indictment, as required to overcome the ordinary effect of a grand-jury indictment on probable cause and causation. Were Plaintiffs' claims for malicious prosecution otherwise viable, they would be barred by qualified immunity.

As to Plaintiffs' derivative conspiracy claim, the lack of an underlying constitutional violation is fatal. Were this not the case, Plaintiffs' conspiracy claim would nonetheless fail, because Plaintiffs do not allege facts establishing that any of these Defendants entered into an agreement to violate Plaintiffs' rights. All claims against Defendants Jump, Jessup, Lowe, and Lawson should be dismissed.

**Statement of Facts**

Although Plaintiffs plead 488 paragraphs of factual allegations, very few are actually necessary to the Court's consideration of this motion.[1] On February 28, 2020, Plaintiffs were indicted by the Glynn County grand jury for violating their respective oaths of office, "as well as charges related to influencing a witness and attempt to commit a felony." Dkt. 1, ¶¶ 384, 385. Plaintiffs' complaint does not identify anyone who testified before the February 28, 2020 grand jury and does not provide any factual

---

[1] Plaintiffs' complaint does not comply with Federal Rule of Civil Procedure 8(a); it is neither "short" nor "plain," and instead displays many characteristics of an impermissible shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (noting that a "complaint containing multiple counts where each count adopts the allegations of all preceding counts," a "complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," are all shotgun pleadings subject to dismissal). Defendants are without sufficient information to identify which of the nearly 500 paragraphs of factual allegations, which span multiple decades, are intended to support Plaintiffs' claims with respect to each Defendant. However, because it is clear that Plaintiffs could not proceed against any of these Defendants on *any* grounds, Defendants are moving to dismiss for failure to state a claim. In the event that Defendants' motion is denied, Defendants will seek a more definite statement of Plaintiffs' claims, as it is not possible for Defendants to frame a "short and plain" response to Plaintiffs' current pleading. *See* Fed. R. Civ. P. 8(b)(1)(A).

allegations about the information the grand jury heard. *Id.* Rather, the sole factual allegations related to the indictment are that Glynn County Police Department Captain Thomas Jump – a nonparty – was subpoenaed as a witness for the grand jury proceedings, but was informed upon his arrival at the courthouse that he was no longer needed. *Id.*, ¶ 386. Captain Jump then participated in a conversation with an investigator from the District Attorney's office during which both men allegedly stated that they did not "support" the indictments. *Id.*, ¶¶ 388-390. None of the Defendants filing this motion is alleged to have appeared at, testified before, or provided any information used during, the 2020 grand jury proceeding resulting in Plaintiffs' initial indictment.

Plaintiffs were arrested and booked into the Glynn County Jail following their indictments. Dkt. 1, ¶ 391. Both posted bond. *Id.* In September 2020, the judge overseeing the criminal case granted special demurrers and "dismissed all of the oath of office violations" brought against Plaintiffs. *Id.*, ¶ 394. In August 2021, a special prosecutor who was appointed after District Attorney Jackie Johnson recused herself "sought reindictments" against Plaintiffs, and on August 20, 2021, the Glynn County grand jury again indicted Plaintiffs "for alleged violations of their oaths of office." *Id.*, ¶ 427. Plaintiffs' complaint is once again devoid of information about who testified during the grand jury proceedings or what the grand jury was told. Instead, Plaintiffs allege only that Defendant Lawson "refused to testify," and that the grand jury was "misled into believing that Lawson was unavailable to appear." *Id.*, ¶ 429. No factual allegations

regarding the participation (or nonparticipation) of Defendants Jump, Jessup, or Lowe in the 2021 grand jury proceeding appear in Plaintiffs' pleadings.

On April 30, 2024, the Georgia Supreme Court reversed the trial court's denial of Plaintiffs' demurrers in connection with the 2021 indictments. Dkt. 1, ¶ 440. And on June 25, 2024, the Glynn County Superior Court granted the special prosecutor's motion to *nolle prosequi* the remaining counts against Plaintiffs. *Id.*, ¶ 441. This action was filed on June 22, 2026. *Id.*

**Legal Standard**

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." *Iqbal*, 556 U.S at 663. Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290

(quoting *Iqbal* and relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (quoting *Twombly*, 550 U.S. at 570).

**Argument and Citation of Authority**

**I. Plaintiffs' claims for malicious prosecution fail.**

*A. Plaintiffs' claims for malicious prosecution based on charges for violation of oath of office are time-barred.*

"A statute of limitations begins to run when the cause of action accrues," and "[a]ccrual of a cause of action under 42 U.S.C. § 1983 is a question of federal law." *Kelly v. Serna*, 87 F.3d 1235, 1238–39 (11th Cir. 1996). Malicious-prosecution claims arising in Georgia are governed by a two-year statute of limitations that begins to run when criminal proceedings against the plaintiff terminate in the plaintiff's favor. *Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998), abrogated on other grounds by *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019). Where a plaintiff is charged with multiple offenses in a single indictment, and one of those charges is dismissed, the statute of limitations on any claim for malicious prosecution with respect to that specific charge runs from the day of the dismissal. *Id.* (holding that malicious prosecution claim accrued, and statute began to run, on "the date on which the district court entered its order of dismissal" with respect to one charge against plaintiff, notwithstanding that plaintiff was tried and convicted on other charges from the same indictment at a different time). In the analogous context of a *Bivens* action, the Eleventh Circuit has held that when criminal

proceedings against a plaintiff terminate as a result of an appellate reversal, the statute of limitations for claims challenging the validity of the criminal proceedings begins to run at the time of the order, not upon the expiration of the time limit for the filing of a petition of certiorari. *Kelly v. Serna*, 87 F.3d 1235, 1239 (11th Cir. 1996).

Plaintiffs acknowledge that the Georgia Supreme Court ruled in their favor on April 30, 2024, reversing the trial court's denial of their demurrers to the 2021 charges for violation of oath of office. *See Powell v. State*, 318 Ga. 875 (2024). At that time, the criminal proceedings against Plaintiffs with respect to the violation-of-oath charges concluded in Plaintiffs' favor – and the statute of limitations on any claim for malicious prosecution in connection with those charges began to run. Indeed, Plaintiffs themselves state that when the Georgia Supreme Court issued its opinion on April 30, 2024, it "expos[ed] blatantly improper prosecutorial overreach" and "demonstrated Powell and Scott's innocence." Dkt. 1, ¶¶ 436, 437. Plaintiffs do not allege that any further action with respect to the oath-of-office charges was taken, or even *could* have been taken, after the appellate court ruled. But Plaintiffs did not file this action until two years and almost two months later, by which time the statute of limitations on any claim for malicious prosecution related to the oath-of-office charges had run. Even if Plaintiffs' malicious prosecution claim related to these charges did not fail for the reasons discussed below, it would be time-barred.

*B. Plaintiffs fail to state a claim for malicious prosecution based on any criminal charges brought against them.*

Malicious prosecution has been identified as "a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003). However, "to establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Id.* The Eleventh Circuit has determined that for the purposes of a §1983 malicious prosecution claim in Georgia, the constituent elements of the common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.*

The United States Supreme Court has clarified that "it is the Fourth Amendment, and not substantive due process, under which [malicious prosecution] claims must be judged . . . . Substantive due process with its 'scarce and open-ended' 'guideposts' can afford [plaintiffs] no relief." *Albright v. Oliver*, 114 S. Ct. 807, 809 & 814, 127 L.Ed.2d 114, 122 & 124 (1994) (internal citations omitted). Thus, where a plaintiff presents a §1983 malicious-prosecution claim, but all of his claims involving underlying Fourth Amendment violations are barred, his malicious-prosecution claim fails. *See Smith v. Deering*, 880 F. Supp. 816, 835 (S. D. Ga. 1994) (Alaimo, J.), aff'd, 71 F.3d 883 (11th Cir. 1995) ("In accordance with *Albright*, the Court must judge Smith's malicious prosecution

claim under the Fourth Amendment. Smith has identified two Fourth Amendment violations: (1) search of his residence without probable cause, and (2) arrest without probable cause. As discussed above, however, Defendants are entitled to qualified immunity with respect to both of these claims. Accordingly, qualified immunity must apply to Smith's malicious prosecution claim as well.”).

Where a plaintiff is indicted and subsequently arrested on that indictment, no Fourth Amendment claims arising from the arrest may be asserted against persons whose involvement ended at the time of the indictment:

> Before leaving the issue of grand jury testimony, we point out that the grand jury indictment broke the chain of causation for the detention from the alleged false arrest and Jones may recover damages only for his detention prior to the grand jury indictment. [Cit.]. *The intervening acts of the prosecutor in presenting the murder case to the grand jury and of the grand jury returning the indictment broke the chain of causation for any detention of Jones that followed the grand jury indictment*. Jones does claim that Powers's false grand jury testimony deceived the grand jury. However, we disagree that this prevents the grand jury indictment from breaking the chain of causation in this case. “We previously have decided that a witness has absolute immunity from civil liability based on his grand jury testimony” and have concluded that “we are prohibited from using [] grand jury testimony as a basis to impose civil liability.” [Cit.]
> *Jones v. Cannon*, 174 F.3d 1271, 1287–88 (11th Cir. 1999) (emphasis supplied).

And “an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant to issue.” *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977). The only exception to this rule is where the indictment is procured by “an officer’s deception” – that is, where an official “fabricates the *sole* evidence used to charge and indict” the plaintiff. *Howard v. Gee*, 538

F. App'x 884, 889 (11th Cir. 2013) (emphasis supplied). In order to establish that a grand jury relied solely on false evidence supplied by a defendant, a plaintiff must show "what additional evidence the prosecutor presented to the grand jury [and] what the grand jury relied on in its decision to indict." *Jones v. Cannon*, 174 F.3d 1271, 1288 n. 10 (11th Cir. 1999).

Plaintiffs were indicted by two separate grand juries on the charges that underlie their claims for malicious prosecution. Although Plaintiffs' complaint meanders through factual allegations spanning nearly two decades – including lengthy descriptions of grand jury proceedings that occurred long before Plaintiff Powell was ever employed by Glynn County – it contains almost no substantive allegations regarding the grand jury proceedings actually relevant to this action. Defendants Jump, Jessup, Lowe, and Lawson are not alleged to have testified before either the 2020 grand jury or the 2021 grand jury. Although Plaintiffs allege in conclusory fashion that the special prosecutor in 2021 "sought reindictments against [Plaintiffs] largely based on Jump and his allies and surrogates making knowingly false claims with fabricated timelines," they offer no *factual* allegations to support this statement. The complaint does not identify the manner in which the special prosecutor learned of alleged "knowingly false claims" or "fabricated timelines," does not elaborate on the substance

of that purported misinformation, and does not explain how the special prosecutor "based" his decision to seek reindictment on such information.[2]

Plaintiffs' indictment – twice over – "conclusively determines the existence of probable cause" and cuts off any causation between Defendants' alleged earlier activities and Plaintiffs' arrests. To state a claim for malicious prosecution against any one of the Defendants bringing this motion, Plaintiffs would be required to plead factual allegations capable of demonstrating that the specific Defendant at issue "fabricated the *sole* evidence used to charge and indict the Plaintiffs. *Howard v. Gee*, 538 F. App'x 884, 889 (11th Cir. 2013) (emphasis supplied). The complaint contains no such allegations, and this silence is alone sufficient to require dismissal for failure to state a claim. Moreover, to the extent that Plaintiffs' exhaustive recitation of events spanning multiple decades and involving dozens of people is relevant to this action, it is to show that no one defendant could have provided the "sole evidence used to charge and indict the Plaintiffs."

---

[2] In fact, Plaintiffs do not even allege that they were arrested or otherwise taken into custody in connection with the 2021 indictments. Because claims for malicious prosecution are governed by the Fourth Amendment, they require a plaintiff to establish "a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003). Plaintiffs do not plead, even in conclusory fashion, that their Fourth Amendment right to be free from unreasonable seizures was implicated by the 2021 indictments – the dismissal of which forms the basis for their claim of malicious prosecution. For this additional reason, the lack of substantive factual allegations surrounding the 2021 indictments is fatal to Plaintiffs' claims.

Because Plaintiffs were indicted by a grand jury on the charges underlying their claims for malicious prosecution, and because their complaint falls far short of alleging that any Defendant supplied false information upon which the grand jury exclusively relied in reaching its decision to indict, Plaintiffs fail to state a claim for malicious prosecution.

*C. Defendants are entitled to qualified immunity.*

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2066–67, 188 L. Ed. 2d 1039 (2014), quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011). In explaining when a right is "clearly established," the Supreme Court has held that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff cannot normally meet that burden unless he can point to previous case law holding that the specific conduct at issue is unlawful.

> [T]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. The line between lawful and unlawful conduct is often vague. [The] "clearly established" standard demands that a bright line be crossed. . . . If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.

> *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citations and some quotation marks omitted).

At the pleadings stage, the burden is on a plaintiff who may face qualified immunity to plead "sufficient factual matter" to show that a clearly established right has been violated. *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2067, 188 L. Ed. 2d 1039 (2014), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Plaintiffs have not pleaded factual allegations suggesting that any of the moving Defendants violated their constitutional rights. The sole substantive claim pleaded in Plaintiffs' complaint is for malicious prosecution, and the Eleventh Circuit has made clear that where a plaintiff was indicted on the charges underlying his malicious prosecution claim, he can proceed only against a defendant who willfully falsified the sole evidence on which a grand jury relied in indicting him. *Howard v. Gee*, 538 F. App'x 884, 889 (11th Cir. 2013); *Jones v. Cannon*, 174 F.3d 1271, 1288 n. 10 (11th Cir. 1999). Despite its length, Plaintiffs' complaint contains no factual allegations about what information was presented to the grand jury that indicted Plaintiffs – let alone allegations that the evidence on which the grand jury relied was both falsified and traceable to one of the moving Defendants. Because there is no allegation that any of these Defendants provided *any* information to either the 2020 grand jury or the 2021 grand jury, Plaintiffs certainly cannot demonstrate that any of them violated clearly established law by providing knowingly false information on which the grand jury ultimately relied. Plaintiffs' claims for malicious prosecution would be barred by

qualified immunity with respect to each of the moving Defendants if those claims were otherwise viable.

## II. Plaintiffs' claims for conspiracy fail.

Plaintiffs' conspiracy claims cannot proceed in the absence of an underlying constitutional violation. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a §1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right."); *McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977). As shown above, none of the Defendants deprived Plaintiff of any constitutional right, and there consequently cannot have been any conspiracy under §1983.

Moreover, even if the substance of Plaintiffs' conspiracy claims could be reached, those claims would fail. Under §1983, "the linchpin for conspiracy is agreement." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.1992). "To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). "[W]hile a plaintiff need not produce a 'smoking gun' to establish a conspiracy, a plaintiff 'must show some evidence of agreement between defendants.'" *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1312 (M.D. Fla. 2005). Here, Plaintiffs do no more than allege in conclusory fashion that "[a]ll of the Defendants reached an understanding amongst themselves to frame the Plaintiffs for crimes they did not commit, to deprive them of their liberty, to seize them without

probable cause, and to prevent them from lawful employment in furtherance of their agreement to eliminate the Glynn County Police Department . . ." Dkt. 1, ¶ 496. Plaintiffs offer no further explanation as to which of the 488 paragraphs of factual allegations incorporated into their conspiracy count set forth this alleged "understanding" among "all Defendants." The complaint would thus fail to set forth sufficient factual allegations to state a claim for conspiracy even if the requisite underlying constitutional violation were present, and dismissal of this count is warranted on substantive grounds.

**Conclusion**

For the foregoing reasons, Defendants Jump, Jessup, Lowe, and Lawson respectfully request that the Court dismiss all claims asserted against them in Plaintiffs' complaint.

This fifteenth day of September, 2026.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com

ehancock@brbcsw.com
**ATTORNEYS FOR DEFENDANTS JUMP, JESSUP, LOWE, AND LAWSON**